Thank you, Madam Clerk. The Clerk has informed us that all counsel who are expected to argue, including one counsel from far away Ithaca, New York, are ready to go. So we will begin with the first of the three argued cases, Sarah Crews v. City of Ithaca. Good morning, Your Honors. Opposing counsel, and may it please the Court. My name is Kelly Curtis, and I speak for the appellant, Officer Sarah Crews. Your Honors, the motion for summary judgment is not an opportunity for the District Court to operate as a jury of one. Here, the District Court repeatedly resolved disputed factual issues in favor of the moving parties. Because there are genuine issues of material fact with respect to Officer Crews' claims, this Court shall reverse the grant of summary judgment and remand for a trial on the merits. Your Honors, the District Court's error is most apparent with regard to the retaliation claim. To provide relevant context, Officer Crews first became a police officer in January of 2002 and served with distinction for 13 years, eight of them with the Ithaca Police Department. It was only in the summer of 2015, following her first formal written complaint of discrimination, that her alleged performance issues mysteriously manifested themselves. In just four years, from May of 2015 to August of 2019, an officer with no prior disciplinary history was the subject of no fewer than 25 separate internal investigations, resulting in 17 discrete findings of alleged misconduct. This sudden and dramatic rise in investigations and discipline following a formal complaint of discrimination is in itself evidence a reasonable jury could rely upon to find a retaliatory motive. In this case, the District Court particularly... Counsel, counsel, suppose, excuse me, suppose we agree with you that this is enough to make out a premeditation case. Then the question is, is the evidence of reasons that they give sufficiently strong so that an argument of pretext cannot be made? If we were to go that way, what would you show to indicate that this was pretextual rather than reaction to actions which you concede your client took? Yes, Your Honor. For both the discrimination and the retaliation claims, Officer Cruz has adduced sufficient evidence of pretext. And I would say that it falls into five separate categories of evidence, all of which would enable a reasonable fact finder to disbelieve the reasons put forward by the IPD and find mendacity. Those are, first and most importantly, the shoddy, one-sided, unfair investigations. For example, Your Honor, in ten of the 17 incidents... Didn't she agree to most of the conduct that was alleged that supported the various disciplinary findings? No, Your Honor, and this was the District Court's principal error. The District Court seemed to understand Officer Cruz's argument to be, I did all of these things, but it's unfair that I was disciplined. In fact, her argument has always been, I have a version of the facts with evidence to support it, different than my employer. And a reasonable jury, if they agreed with my version, could believe, could conclude that they trumped up false charges as a pretext for firing me. Well, if that's true, that she followed, she contested everything all the way along, then you'd be right. But there was evidence in there that she admitted yelling, using cursing, disruptive, what might be disruptive behavior in the workplace. Yes, Your Honor, and there are a couple of points that would still allow her to show pretext. She did, I will agree, she did admit to the sporadic use of profanity and raising her voice. She has at all times disputed that that behavior was generally considered a violation of policy. And that is evidenced by other employees who engaged in similar behavior in the same time frame, who were not subject. There's one other employee who did it once. There is one other employee in the- I don't know what his name was. Sorry. What was his name, God, or something like that? It's Lieutenant Jeff Cole. Cole. Who directed at, directly at his subordinates, called them faggots and fuckers. That's what she cites, right? That is one of the things that she cites. But Chief Nair, in his own deposition testimony, admitted that the use of profanity and harsh language is common, if not daily, occurrence in a police station. And the Ithaca Police Department was not subjecting other officers to routine discipline. And before Officer Cruz complained about discrimination, Officer Cruz was not being disciplined for using profanity. What is the adverse action that you're claiming here, her termination? It is the suspension and the termination. We've also alleged the retaliatory beat assignments with respect to retaliation. But primarily, it's the termination arising from the fourth notice of discipline. Right, and that was four years after the incident, after she filed a complaint. It was, Your Honor, but I think what is complicated in this case is that the city itself was frequently choosing to delay imposition of formal discipline. They're the only ones who control the date of the adverse action. And in addition to that, Officer Cruz was engaged, and the record establishes this. You argue that they deliberately delayed what they could have done in terms of disciplining her by discharging her? Yes, Your Honor. We believe that there is sufficient evidence in this record for a rational jury to conclude that her supervisors were engaged in ongoing discussions with counsel about outside counsel. Outside counsel defending this lawsuit about this matter. You can find in the Monticello Supplement in Exhibit 23, quote, Mr. Levine, that's the city attorney, suggested compiling all of the complaints on Officer Cruz, and he will check with outside counsel already on a course of action to take. Lieutenant Schwartz testified in his deposition that a staff meeting was held where all of Officer Cruz's supervisors were instructed to pay attention, document, and report anything involving Officer Cruz after she filed her lawsuit. Right, well, that's true. It's all after she filed her lawsuit. But usually, if that's done, it's not nefarious. We don't want to fire her unless there's solid reason for it. Otherwise, you're saying the mistake was they let her work for another four years. They should have fired her right away. It's not an argument. No, Your Honor, what I'm saying is that a variety of different pieces of evidence, of which one are the delays and the involvement of counsel, are sufficient that a rational jury might conclude that the employers Counsel, I have two questions. First, you don't say that the initial disciplinary NOD was itself an adverse action given that it was made, that it led to the firing? Yes, Your Honor. There is something of a problem because the firing is very long distance from when she brought the complaint. On the other hand, she starts getting treated as fireable almost immediately after. So are we supposed to ignore that? Or isn't that sufficient? Could you tell me a bit more about that? Yes, Your Honor. What we are saying is that much like the plaintiff in the Tima v. Celia case that the city relies on, which did go to a jury, what we are saying is that in this case there are both formal acts of protected activity, filing the EEOC complaints, a lawsuit, a written complaint, and she's engaged in a near-continuous protest against the discriminatory application of these policies. So here, it's not a case as simple as here's the moment of protected activity, here's the moment of adverse action, measure the distance in between. The final act in the last notice of discipline where she gets fired was her objecting to the discriminatory application of these employment policies. I see that my time has expired. Yeah, well, I understand. Just one further question. Retaliation, I mean, the fact that she files a written complaint doesn't give her immunity from discipline for the future if in fact she engages in improper conduct. That is true, Your Honor. And that's the concern here. That if we recite all of these other things as being retaliatory, that in effect is a form of immunity, if we agree with you. It is not a form of immunity, and certainly the employer has a right to run its business. But that right has to be balanced against the rights of the employee. Most importantly, whether Officer Cruz actually went too far in her protected activities and general deportment is essentially a factual question and should be decided by the jury and not the district court. I have one other question, and this is just related to this. The misgender argument that you're making, it seems to me that that's being made now on appeal for the first time. Would you agree to that? I do not agree with that, Your Honor. In the district court's decision and order, our argument is forcing her to comply with the search and jamming policies with respect to females was a form of misgendering sufficient to create a hostile work environment. But was it stated in those terms? It was, because the district court in its- Tell me where it said, it talks about misgendering as such, as opposed to just forcing her to, in effect, do something that she doesn't want to do on the basis of her gender. I agree, Your Honor, that the original memo and op was not artful on this point. But it did argue that her allegation is that being forced or ordered to conduct searches on female subjects in itself created a hostile work environment. The decision and order says that at page 22. All she's doing is clarifying how the application of those policies created a hostile work environment. Thank you. You've reserved some time, of course. All right, we'll hear from Mr. Josephson. We can't hear you, sir, you're on mute, we think. Apologies, good morning, good morning, judges, good morning, counsel, the police, the court, I'm Maury Josephson, assistant city attorney for the city of Ithaca, for the defendant. This case is about 16 well-documented incidents of misconduct by Officer Cruz for which the underlying facts are admitted. And there's really, there's no dispute about that. If you look at pages 4 to 11 of the plaintiff's reply, you see agreement that the facts occur by all sorts of arguments as to why discipline shouldn't have been imposed. Counsel? Yes. Question, when we're talking about retaliation, and there are good reasons for the action that were taken, and retaliatory reasons both, is that enough to say that it was pretextual? That is, does the retaliation have to be the only or the only reason that the action was taken? Retaliation under Title VII, under the Nassar decision, I believe retaliation needs to be the but-for cause of the disciplinary action. And the plaintiff, in any event, did not come forward with any admissible evidence to suggest that retaliation was a motivation for the actions taken by the city, other than contortions about temporal connection, which this court has already addressed. And that is that the discharge- Sort of on the cusp, isn't that four months? Is sort of on the cusp of, if she'd been fired after four months afterwards, then wouldn't that be within the time frame of possible retaliation? But she wasn't fired- I understand that. No, but so, but you're saying that more has to be shown that the first disciplinary action was four months. Yes, it is. I think the cases are clear that temporal connection can be used to establish a prima facie case, but then temporal connection is not sufficient to establish that reasons given are contextual, and particularly in this case, where the police department exercised enormous restraint in applying progressive discipline, the first disciplinary actions, these incidents occurred over a span of four years. And the first disciplinary action was a very minor penalty, it was something like forfeiture of 16 hours of vacation pay, which is typically gone in police discipline. And the second one was 32 hours. It wasn't until these incidents kept occurring and occurring over and again, and particularly accelerated and grew more severe in 2018 and 2019. That the department, through a new chief, chief mayor, proceeded with seeking the discharge of officer Cruz. And in response to that showing, there's no evidence either with respect to the discrimination allegations or the retaliation allegations that any other officer received more favorable treatment under comparable circumstances. And that's the main issue, the main deficiency of Officer Cruz's complaint, is that she offers many factual arguments with respect to why she shouldn't have been disciplined. But they're not genuine issues of material fact, because that's not the role of the court. The court's role, as it is said in case after case, is that the issue is not whether the employee should be disciplined. That's up to the employer. The issue is, was the discipline disparate? And Officer Cruz has come forward with no evidence of any disparate discipline. The argument she makes about profanity, I mean, if I knock my webcam off my computer, I may say, escort. And that would be commonplace. But if your honor asks for a supplemental brief, and I say to your honor, your order is bold, yes, that's an entirely different situation. And that's the admitted fact in this case, that among the 16 incidents, there are 16 incidents mostly directed at the general public, but also at superiors and fellow officers, that's what she said to her lieutenant, is your order is one. And even if those things are said in protest of discrimination, as this court's modem of decision indicates, and going all the way back to McDonnell Douglas versus Green, where the plaintiff caused a traffic jam in front of the employer's facility in order to protest discrimination, that activity is not protected. And that activity was a sufficient reason for McDonnell Douglas to refuse to rehire Green. The incidents of the misconduct in this case which are admitted, not only are there testimonial admissions, which we review in detail in our brief, but also the record includes body worn camera footage showing, there are two examples that I would direct to the court, one on April 22nd of 2018, involving an individual named AA, the body worn camera footage of Officer Cruz's arrest of this minor, an unlawful arrest, using force, cutting the individual fairly severely, swearing at the individual in the car saying, if you don't want to do it the easy way, you'll do it the hard way, you're acting like a little animal, shut your mouth little girl, I've had enough of your S word tonight, that's not just the testimonial admission, that's not just something that you'd have to interpret off of a deposition transcript. That is something that's there and it's on video. And the same with respect to Officer Cruz's threat to Officer Balzac of I will get you of August 14th, 2019. That's ECF 90, Mayor Exhibit D, it's on a CD and it's very clear and very chilling, Officer Cruz saying, I will get you later. So those things are there, they're in the record, there's no evidence that anyone, no evidence of anyone having engaged in any sort of conduct at the Ithaca Police Department, similar to Officer Cruz's. And she has, the district court correctly concluded that she failed to establish a prima facie case of discrimination or retaliation. And even though it didn't reach the pretext level of the inquiry, there's no evidence of pretext in this case either. This, Officer Cruz presents her case as though her claims are a logical extension of the Supreme Court's decision in Balzac versus Clayton County. And of course, within that, this court's decision in Zarda, or about the city of Ithaca's policies based on her sexual orientation and gender presentation. Even though those policies are, we're required to have them pursuant to regulations of the New York State Department of Corrections. And we tried to get relief for Officer Cruz from those, but the relief we got, such as putting cameras in the women's lockup, in the female lockup area, were not sufficient. And this case is not, it's not a logical case for any interpretation or extension of Bostock. Bostock involved individuals who were excluded from workplace because of their sexual orientation, or because they were transgender. And they just wanted to come to work as they were. And- Yes. If this were an ADA case, and she asked for an accommodation, because of her particular circumstances, an accommodation would probably be able to be granted. But you say that that can't be done in the context of this situation. I mean, you know, the rule you had was a perfectly correct rule, in any way was required. Federal and local. There were accommodations under the Department of Justice for transgender. There was nothing with respect to someone in her situation. Is there any obligation in a situation like that to make a specific accommodation, as there would be in ADA? The answer to your, the simple legal answer to your question, Your Honor, is no. Is that the anti-discrimination laws confine the concept of reasonable accommodation to two areas. And those are the two basic areas. And those are in the context of Title VII for religious observance, and in the ADA for reasonable accommodation of a disability. There's nothing in the text of Title VII that would call for the type of accommodation that Officer Cruz was asking for in this case, which is to be relieved from a duty of searching female prisoners. And moreover, even if we put it into the reasonable accommodation rubric, the City of Ithaca did engage in a good faith interactive dialogue with Officer Cruz to address her concerns, sought to bring her into revising the policies. Went outside to the Department of Correctional Services to see what accommodations could be offered to Officer Cruz within the context of their regulations concerning the search, transport, and supervision of female prisoners. We actually did the interactive process, but what we came up with wasn't good enough. So I think the answer is twofold. There is no obligation under Title VII to accommodate based on sexual orientation. And as Judge D'Agostino found, that's exactly what Officer Cruz is looking for. She's looking for a exemption from a duty because of her sexual orientation. Not just as in Bostock, to come to work as you are, be able to come to work as you are. Well, Mr. Josephson, had you provided the sort of accommodation that you're addressing now, do you believe you would have encountered any legal impediment, or would that be a problem? Or was that simply a matter of personnel discretion? I'm not sure which accommodation your honor means. Well, take the one about examining the detainees that she was expected to examine. Just take that one as an example. Let's assume for the argument that you chose to accommodate her particular preference in that respect. Would that have been a problem for you? Yes, it would have put the city in a legal conundrum, as Judge D'Agostino pointed out in her position. Because we would basically, you have Officer Cruz being excused, is a woman being excused from searching female prisoners because of her sexual orientation and gender presentation. Consider, for example, another female officer who doesn't want to search female prisoners. And says, well, who's heterosexual. And says, well, I'm female, I'm heterosexual. Why am I having to do this work when Officer Cruz is exempt from it? So I think granting the accommodation, so to speak, would actually have put the city in a legal bind. Now, Mr. Josephson, you've heard and we've read about the record that indicates that after years of mostly satisfactory job performance, the notices of discipline against Officer Cruz escalated after she filed her complaint with the EEOC. And that was on August 11, 2016. In your view, does the record contain an explanation of why that is the case? Why after August 11, 2016, the notices of discipline escalated? Well, I guess we should take the threshold question. Is it fair to say that after August 11, 2016, the notices of discipline did increase or were escalated significantly? The answer to that question is no, Your Honor. As previously mentioned, the police department acted with enormous restraint in this situation. The notices of discipline that were closer in time to the original EEOC complaint, it sought to impose minor penalties. And were based on conduct that's admitted to have occurred. The only reason the discipline grew was because the number of incidents continued to increase. And if that issue, if, first of all- And what do you think is the explanation for that? Or how would you describe why that is so? The answer for why that is so is because Officer Cruz was engaging in this misconduct. And- Yeah, but what about before her complaint? Is it, was there any evidence that she had been engaging in that conduct prior to that? And that they were showing restraint? Or that, if she's engaging in the same conduct throughout, not just four months after the retaliation, not just four months after her complaint, but all along. And they were excusing her, not even disciplining her, before the retaliation. Then wouldn't it be more like retaliation if they were all of a sudden deciding, now we're going to file complaints. We're going to do the NRDs. The answer is that there's no record of any serious misconduct by Officer Cruz occurring during those prior times. And so the incidents are what they are and happened when they did. And I think when you look at the totality of the incidents and how they increased in number and the temporal proximity completely falls away. So your point is that the other side is not able to make out a case that she had been engaging in this conduct for years prior to the complaint and it was not being recognized or not resulting in disciplinary actions. But that, according to the record, it all started afterwards. That's correct, Your Honor. Okay, thanks very much. We'll hear from Cruz's counsel for reply. Thank you, Your Honor. Perhaps before you get into your full-fledged reply, I could just ask you, by way of preface, on page two of your reply brief, you have a number of terms that you provide and which you identify. Are all of these terms embraced by the relevant statutes? Or are these terms that you or Miss, or Officer Cruz prefer to utilize? No, they are embraced, not by the statutory language itself, Your Honor. The statutes they're referring to about limitations on cross-gender searches and supervision. The most important is the Prison Rape Elimination Act, which the city has relied on extensively throughout this litigation. I think what's important, and this is in our reply brief at pages 12 to 15. The Department of Justice is the agency responsible for enacting that, the regulations relevant to that statute. And it said, in 2014, that staff members subject to the Prison Rape Elimination Act could have their gender determined based upon stated or identified gender and not biological sex. Therefore, it could not be that the city's claim that treating Officer Cruz according to identified gender, that being non-binary, and masculine gender expression would put it in non-compliance with that statute. The DOJ said a year before she even complained that that was not true. And they could have found that easily in 2015 when they were allegedly going to great efforts to accommodate Officer Cruz's request. Counsel, do you have any evidence of behavior akin to that which gave rise or is said to give rise to the disciplinary actions after she complained? Do you have any evidence that Officer Cruz engaged in the same kind of conduct before he complained and was not disciplined? No, because Officer Cruz was not engaged in this behavior. She was subjected to excessive scrutiny by every supervisor she had, where they trumped up charges to allege discipline. In this case, 60%, if you go through the notices of discipline, Your Honor, 60% of the alleged incidents of misconduct arise directly from the unlawful discrimination and retaliation alleged in this lawsuit, 60% of them. So I do not believe Officer Cruz was engaged in so-called insubordinate, discourteous behavior such as her employer understood it, either before or after. I think they used that to cover a discriminatory motive, that a jury could easily draw that inference from this highly suspicious sequence of events. Thank you. Your Honor, this case, from the beginning, has boiled down to what actually motivated the Ithaca Police Department's desire to terminate Officer Cruz. There is evidence in the record to support a rational jury concluding that it was the product of discrimination and retaliation. This court has held repeatedly that the question of what motivated an employer's desire to fire a worker is a quintessential jury function. Officer Cruz adduced sufficient evidence to have these questions put to the jury. And we would respectfully request that this court reverse the grant of summary judgment and remand to the trial court for a trial on the merits. Thank you. Thank you. Thank you very much. We will reserve